IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEST GOSHEN SEWER AUTHORITY | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al. | : | NO. 12-5353 |
| Defendants. | : | |

**MEMORANDUM**

**L. Felipe Restrepo, U.S. District Court Judge**                                     **July 29, 2013**

On September 19, 2012, Plaintiff West Goshen Sewer Authority ("Plaintiff" or "West Goshen") filed an action against the Environmental Protection Agency ("Defendant" or "EPA"), challenging the substance and lawfulness of a regulation adopted pursuant to the Clean Water Act. Before this Court now is a Motion to Intervene as Defendant filed by the Delaware Riverkeeper Network ("Movant" or "DRN"). Because I find that DRN has met the standard for intervention, I will grant the motion.

**I.**     **Procedural and Factual Background**

The Clean Water Act ("CWA") was adopted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 303(d) of the CWA requires states to identify water bodies in their jurisdictions that are not meeting applicable water quality standards and are deemed to be impaired, via so called "303(d) lists," identifying the reasons for the impairments. 33 U.S.C. § 1313(d)(1)(A). Section 303 further requires states to prepare a total maximum daily load ("TMDL") for each water body on the list, calculating the amount of the pollutant an impaired water body can naturally absorb and remain

unimpaired. 33 U.S.C. § 1313(d)(1)(C). Where states fail to meet their obligations, Congress requires that EPA take action and develop these water quality standards and TMDLs. 33 U.S.C. § 1313(d)(2).

On January 24, 1996, the American Littoral Society, acting with its local affiliate, Movant, filed suit against EPA to compel the agency to prepare TMDLs for Pennsylvania bodies of water. *American Littoral Soc'y v. U.S. EPA*, No. 96-489 (E.D. Pa. 1996). Based on that litigation, EPA entered into a consent decree ("the Consent Decree") in which it agreed to a specified timeframe for developing or approving TMDLs. (Doc. 30, Ex. 2-3.)

In 2008, EPA prepared and published a proposed TMDL for the entirety of the Chester Creek watershed, including Goose Creek. (Compl. ¶ 50.) On June 30, 2008, EPA issued a final TMDL, focusing exclusively on the Goose Creek watershed and addressing nutrient impairments, specifically phosphorus. (*Id.* ¶ 50.) In 2011, EPA moved to have the Consent Decree dismissed, providing the Court with a list of TMDLs that were established, in order to demonstrate satisfaction of EPA's responsibilities under the Consent Decree. (No. 96-489, Doc. 40.) The TMDL at issue here was among those put forth by EPA, and its establishment in 2008 was one of many TMDLs used to demonstrate compliance with the Consent Decree. (*Id.*, Doc 40-3 at 40.) Pursuant to the motion, which was unopposed, the Hon. Berle Schiller dismissed the Consent Decree on September 12, 2011. (*Id.*, Doc. 41.)

On September 19, 2012, just over one year after Judge Schiller dismissed the Consent Decree, West Goshen filed this action, challenging the methodology and process by which EPA established the TMDL, along with EPA's refusal to reconsider the substantive merits of the TMDL. West Goshen asks this Court to vacate the Goose Creek TMDL. (Compl. ¶ 131.)

After the filing of this suit, EPA and West Goshen began extensive, good-faith negotiations on the matter. While the contours of an agreement continue to be fluid and appeared to change up to the moment of a July 19, 2013 oral argument, the parties suggested that they may, upon reaching an agreement, move for this case to be placed in civil suspense, giving EPA approximately three years to re-evaluate the TMDL, while effectively tolling allegedly unwaivable statutes of limitations.[1]

It appears that this litigation has not been widely publicized. Prior to the intervention motion, the entire coverage of the matter consisted of a brief article on a subscription website, "Law360.com." However, on May 16, 2013, an anonymous caller alerted Movant Delaware Riverkeeper Network, through its pollution hotline, about these proceedings. (Decl. of Maya Van Rossum, Doc. No. 32-4 ¶ 12.) DRN is an environmental advocacy organization that "advocates for the protection of the Delaware River, its tributary streams, and the habitats and communities of the Delaware River watershed." (*Id.* ¶ 3.) Because DRN, including its then and current Executive Director was actively involved in the litigation that led to the 1997 Consent Decree; because its members enjoy the use of the Delaware River watershed generally, and Goose Creek specifically; and because DRN advocates for the protection of the entire Delaware River watershed, DRN filed the instant motion to intervene, arguing its right to defend the TMDL. (Doc. No. 32.)

On July 19, 2013, I heard argument from DRN, West Goshen and EPA. EPA acknowledged DRN's motion as timely filed by a sufficiently interested party, but asked that this

---

[1] Leading up to the oral argument it was understood that the TMDL would be suspended during this time. However, at oral argument, EPA represented to the Court that the suspension of the TMDL was no longer part of the tentative agreement.

Court delay ruling on the motion until after the contours of the agreement between West Goshen and EPA are clearer. West Goshen opposed the motion on all grounds.

## II. Legal Analysis

DRN seeks to intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2). The Third Circuit requires a potential intervenor to establish "1) a timely application for leave to intervene; 2) a sufficient interest in the underlying litigation; 3) a threat that the interest will be impaired or affected by the disposition of the underlying action; and 4) that the existing parties to the action do not adequately represent the prospective intervener's interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (*citing Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998)). I will address each in turn.

### a. DRN's Motion is Timely

The factors for considering the timeliness of an intervention motion are: "1) the stage of the proceeding; 2) the prejudice that delay may cause the parties; and 3) the reason for the delay." *Benjamin v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) (*quoting Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)) (internal citations omitted). "[D]elay should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Id*. The timeliness of a motion to intervene is determined by the trial court in consideration of all circumstances. *Choike v. Slippery Rock Univ. of Pa.*, 297 Fed. App'x 138, 140 (3d Cir. 2008) (*citing In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982).[2] In reviewing the facts before me, I find that West Goshen had no reasonable notice

---

[2] At argument, EPA conceded that Movant's motion was timely.

of the lawsuit, such that it unreasonably delayed the proceedings. Additionally, I do not find significant prejudice to West Goshen should DRN be allowed to intervene.

In arguing that DRN's motion was unreasonably delayed, West Goshen claims that "national media outlets, including environmental law publications, reported on the suit," and hence, pursuant to *Choike*, 297 Fed. App'x at 142 (intervention denied), and *Kitzmiller v. Dover Area School District*, 229 F.R.D. 463, 466 (M.D. Pa. 2005) (same), this Court should deny intervention. However, an examination of those cases makes clear how different those circumstances are than the circumstances before me here. In *Chioke*, the District Court noted that multiple stages of the action were "well-publicized" and that the intervenors had actual knowledge of the suit for months prior to filing their intervention motion. *Choike v. Slippery Rock Univ. of Pa.*, No. 06-622, 2007 WL 184778 at *3 (M.D. Pa. Jan. 22, 2007) ("What took the [intervenors] eleven months to learn then, was not of the risk to their rights, but a legal theory to pursue."). Similarly, in *Kitzmiller*, the District Court found that the suit was the subject of "intense media scrutiny," and that the proposed intervenor again had actual knowledge of the suit for four months prior to intervening. 229 F.R.D. at 466-67. Nothing of the sort exists here, with no allegations that DRN knew of this matter prior to being alerted to it on its hotline.

Further, while West Goshen argues that "national media outlets, including environmental law publications" covered this matter, at argument and in its papers it could point only to the single article published by "Law360.com." (Pl.'s Br. in Opp'n, Doc. No. 30 at 6.) Thus, I find that this action was far from well publicized. Further, I believe it to be unreasonable to expect

that a public interest organization use its limited resources to constantly monitor paid subscription services for lawsuits in which it may have an interest.[3]

Thus, finding that DRN did not delay in the filing of its motion, I turn to the stage of the proceeding and the potential for prejudice caused to West Goshen. In making this analysis, I note that this case is at a unique stage. On the one hand, due to a judicial stay, little discovery has taken place and West Goshen has not yet needed to respond to EPA's motion to dismiss two counts of the complaint. (Doc. No.'s 24-26, 39.) No claims have been decided on the merits and little resources have been spent litigating them. On the other hand, the parties have been ably and regularly engaging in good faith "settlement" negotiations over the course of multiple months. *See Choike*, 297 Fed. App'x. at 141 (denying intervention at "relatively advanced" stage of litigation, with discovery closed and settlement reached prior to intervention motion).

Here, however, the much discussed settlement agreement would not actually settle the matter. Instead, it would freeze it, with the Court putting the case into civil suspense for up to three years, while EPA re-evaluated the TMDL. If at the end of that period EPA and West Goshen continue to disagree regarding the TMDL, the suit would be opened and litigation would restart anew. Thus, to the extent that Movant "interferes" with negotiations and scuttles an attempt to reach a temporary settlement, intervention may speed the disposition of this case on the merits, rather than slow it down. Thus, unlike *Choike*, where the trial court found that intervention would mean that "[m]atters which are ripe for resolution could be postponed for

---

[3] At argument, West Goshen suggested that the fact that this action itself was searchable through the Eastern District of Pennsylvania's website was enough to put DRN on constructive notice, as a public interest organization. Because every lawsuit in this district is available through PACER's search function, this would essentially mean that anytime any lawsuit is filed in federal court, a public interest organization is *always* and immediately put on constructive notice. While such a standard would make this Court's undue delay analysis far simpler—a public interest party would almost always be found to have unduly delayed in moving to intervene in a pending action—I decline to make such a holding.

years," 2007 WL 184778 at *2, intervention here may mean the merits of this case are heard sooner than if the motion is denied.

On balance, considering the procedural posture of the matter, the lack of briefing on the merits of the case, and the reality that a "settlement" might mean this case goes on for years, while intervention may mean an earlier resolution on the merits, along with my belief that movant did not delay, I find DRN's motion timely filed.

### b. DRN Has a Sufficient Interest in this Litigation

The standard for whether or not the movant has a sufficient interest is whether "the claimed interest in the litigation . . . is specific to those seeking to intervene, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Benjamin*, 701 F.3d at 951.[4] The standard is a flexible, case specific one, particularly for environmental cases such as this. *See Kleissler*, 157 F.3d at 971 ("The reality is that [environmental regulation] cases frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention—the protection of third parties affected by pending litigation. Evenhandedness is of paramount importance.").[5] I believe an examination of the history of this TMDL, along with an examination of DRN's mission and its membership, makes clear that DRN possesses a sufficient interest for the purposes of intervention.

In 1996, DRN brought a lawsuit regarding EPA's failure to establish TMDLs, and seeking specific timelines for the establishment of those TMDLs. The suit led to a 1997 consent

---

[4] Here, again, EPA conceded at argument that Movant possessed an interest.

[5] The Third Circuit has not yet determined whether the requirements for intervening under Rule 24 are the same as those for a party's standing to bring suit. *See Am. Auto. Ins. Co. v. Murray* 658 F.3d 311, 318 n.4 (3d Cir. 2011) (surveying other circuits).

decree, under which multiple TMDLs were established, including the Goose Creek TMDL in 2008. In 2011, EPA sought and received Court permission to dismiss the Consent Decree, noting that it had established its required TMDLs, including for Goose Creek. *See Civ. No. 96-489, Doc. 41*. Then, one year after the close of that decree, this lawsuit was filed. The instant suit, if successful, would end that very same TMDL.

At argument, West Goshen appeared to argue that the benefit of the Consent Decree was not actually the effect of the TMDL, but something more akin to a procedural scheduling. So, this argument goes, that schedule having been met, DRN's interest in this TMDL has evaporated. I disagree. While it is true that the Consent Decree does not appear to have given DRN a hand in evaluating the science of TMDLs—and while I do not believe the decree gives DRN perpetual standing to automatically challenge every action against a TMDL established pursuant to the Consent Decree—the purpose of the Consent Decree was not scheduling for scheduling's sake. Instead, read more fairly, the purpose was to establish TMDLs to accomplish the Clean Water Act's explicit mission of "restor[ing] and maintain[ing]" bodies of water, 33 U.S.C. § 1251(a), including various parts of the Delaware River watershed such as Goose Creek. While I make no judgment at this stage about the underlying validity of the science used in establishing the Goose Creek TMDL, DRN should be given the opportunity to defend the fruit of its very recent litigation.[6]

Moreover, I need not only consider the Consent Decree when determining DRN's interest, given its very mission of protecting the Delaware River watershed, of which Goose Creek is a part, and the sworn declarations of its Executive Director and other members of the

---

[6] West Goshen, in its brief and argument, also argued that, among other things, because DRN did not submit comment to the EPA on the establishment of the Goose Creek TMDL, it has not shown sufficient interest in Goose Creek. I am not convinced that participating in the comment process stands above filing of a lawsuit which leads to a 14-year consent decree.

group. (Doc. Nos. 32-4, 36, 40.) DRN members have "active physical involvement and interaction with Goose Creek as a natural resource," (Doc. 36 at 21), receive drinking water from a water intake impacted by alleged pollution in Goose Creek, (Doc. No. 40 at 5-6), and are exposed to the smell of the creek, also allegedly caused by this pollution, (Doc. No. 40 at 9-10).[7]

"Numerous other courts have granted intervention as of right where the particular interests of a special interest group were threatened." *Am. Farm Bureau Fed'n v. U.S. EPA*, 278 F.R.D. 98, 107 (M.D. Pa. 2011) (discussing standing of public interest groups). DRN advocates for a watershed that includes Goose Creek. DRN's members use the watershed and are affected by pollution from Goose Creek. DRN's litigation forced EPA to establish a TMDL governing Goose Creek. As such, I agree with both Movant and EPA and find it clear that DRN has a sufficient interest to intervene.

### c. There is a Threat that DRN's Interest will be Impaired by Disposition of the Action

"In order to meet the requirements of Rule 24(a)(2), proposed intervenors must also demonstrate that their interest *might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo. Ass'n*, 72 F.3d at 368 (*citing United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 n.15 (3d Cir. 1994)) (emphasis in original). "[T]he court must consider not only the nature of the relief sought (e.g., to vacate the TMDL), but also the practical consequences of such a ruling." *Am. Farm*, 278 F.R.D. at 109 (internal citation omitted). For many of the same reasons I found that Movant has a legally sufficient interest in the outcome of this matter, I find that interest would be impaired by

---

[7] At argument, West Goshen presented this Court with a map of the Delaware River watershed, to demonstrate Goose Creek's attenuated relationship with the Delaware River. Goose Creek may be small, but there seems to be little disputing that it is, in fact, part of the Delaware River watershed and is a body of water covered under the Clean Water Act.

disposition of this action without DRN's participation. *Id.* ("Having already found that [environmental plaintiffs have] established a legally protectable interest related to this case, the court can dismiss this argument.") (finding threat to interest). Here, the relief sought by Plaintiff West Goshen—the elimination of a TMDL established under the Consent Decree—would deprive DRN of the benefit of its years-long Consent Decree requiring EPA to establish TMDLs such as this one. Should West Goshen prevail, a significant amount of additional effluent will presumably be deposited into a creek that is part of the Delaware River watershed, and which impacts DRN members.[8]

West Goshen argues that Movant's interest will not be impaired because it believes that "there is considerable doubt regarding the nature of the impairment to Goose Creek which must first be determined in order to protect the Creek and its designated uses." (Doc. No. 34 at 11.) West Goshen's skepticism of the TMDL may eventually be validated. But, for the purposes of this motion, West Goshen is effectively asking that its version of the science behind the TMDL—the heart of the controversy before us here—is accepted as true, something that can only be determined at the merits stage of this action.

Moreover, this Court notes that to the extent that the Consent Decree was about the "timing" of when TMDLs were established, that argument cuts against West Goshen. As noted, at least one of the proposed settlements, as explained to this Court, would effectively reach back and delay the implementation of that TMDL for years. The Consent Decree was dismissed in 2011 because EPA demonstrated that it established TMDLs according to a judicially supervised timeline. If, upon the filing of a lawsuit, those TMDLs can now be summarily dismissed or delayed for years (with the needed cooperation of this Court and its suspense docket to do so),

---

[8] It is worth noting again that this Court makes no finding regarding the core of this matter, including the Goose Creek TMDL and the science it was based on.

the party that was responsible for forcing the establishment of the TMDL in the first place, DRN, has an interest that can be impaired by disposition of this litigation, through either this Court's ruling on the merits or through a settlement agreement.

### d. The Existing Parties Do Not Adequately Represent DRN's Interests

Last, DRN must demonstrate that its interest in preserving the TMDL may not be adequately represented by EPA in this litigation. *Mountain Top Condo*, 72 F.3d at 368. "As the Supreme Court stated, the requirement of [Rule 24(a)(2)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Id*. (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, (1972)) (internal quotations omitted). There is a presumption that the Government is an adequate representative "particularly when the concerns of the proposed intervenor, e.g., a 'public interest' group, closely parallel those of the public agency," *Kleissler*, 157 F.3d at 972. This makes intuitive sense, as not every challenge to a governmental unit should, in of itself, be ripe for the participation of an intervenor. But, when "an agency's views are necessarily colored by its view of public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light." *Benjamin*, 701 F.3d at 958.

> In *American Farm*, the Court was persuaded, in part, that a similar
>
> incongruence of interests may lead EPA to settle or otherwise resolve this litigation in a matter unfavorable to their interests, or may dissuade EPA from appealing a decision that adversely affects Movants' interests. As noted in *Kleissler*, this can give a proposed intervenor 'legitimate pause' when considering its confidence in adequate representation by the government.

278 F.R.D. at 111 (internal citations omitted). Here, no speculation is needed. EPA has already considered settlement options that would directly contradict DRN's stated interest of enforcing and defending the Goose Creek TMDL. While these settlement discussions may no longer

11

include suspension of the TMDL, EPA and Goose Creek have not shared with this Court the current settlement proposals to analyze them. Left only with what is before me, including that the government agency itself largely concedes that Movant should be allowed to intervene, I find that DRN has adequately demonstrated that its interest in the matter may have already diverged from those of EPA. As such, and finding that DRN has met each factor of the Third Circuit's test for intervention, I am compelled to grant DRN's motion.

### III. Scope of Intervention

While EPA generally conceded at argument that DRN meets the standard to intervene as of right, EPA asks that this Court grant a limited scope of intervention, such that DRN may intervene only to the extent that it may participate in an actual defense of the merits of the TMDL. Said differently, EPA asks this Court to disallow DRN from participating in the ongoing settlement negotiations between EPA and West Goshen. Like West Goshen, EPA does not want to bring a third-party into complicated, bilateral negotiations that are sufficiently advanced. The Third Circuit has found it appropriate "in certain cases to conduct a two-step examination, separately evaluating whether the applicant has a right to intervene at the merits stage and whether he or she may intervene to participate in devising the remedy." *Benjamin*, 701 F.3d at 951 (internal citations and quotations omitted). Here, effectively, EPA asks that DRN only be allowed to participate in the merits stage, should the case get that far, not the potential remedy stage, at least for now.

To the extent a Court finds limited intervention burdensome or inequitable, it may decide it more appropriate to grant intervention in full. *See Kleissler* 27 F.R.D at 973 ("We explored the viability of that form of relief with counsel at oral argument, but neither they nor we have been able to arrive at a pragmatic application of that option here without unduly attenuating the

applicants' interests."). Like in *Kleissler*, a limited intervention was discussed at argument, but, now as then, this Court finds that it would be inefficient and unfair to do so, given the practical realities of this case. *See Forest Service Employees for Environmental Ethics v. U.S. Forest Service*, No. 08-323, 2009 WL 960244, 4 (W.D. Pa. Apr. 7, 2009) (finding for full intervention).

The proposed settlement agreement here would rely on this Court's consent to that same settlement agreement, by placing this matter on the suspense docket, in such a way that has appeared, at this stage, to inevitably address the timing and implementation of the much discussed TMDL. As noted above, this is something in which I believe DRN has an active and legitimate interest, and I believe it would be both burdensome and impractical for the Court and inequitable to DRN to take a bifurcated approach.[9] Thus, I decline to limit intervention in this way.

An implementing Order follows.

---

[9] I will not force West Goshen and EPA to let DRN into bilateral settlement negotiations. However, I note that these negotiations generally appear to rely on the placement of this matter onto the suspense docket. "The decision to stay is one left to the district court as a matter of its discretion to control its docket." *Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709, 712 (3d Cir. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.3 (1983)). On July 25, 2013, through a letter to the Court, EPA and West Goshen informed me that they now expect to share a draft settlement agreement with DRN. I believe this to be wise, for efficiency purposes, because upon a request for placement of the matter on the suspense docket, this Court will listen to the input of all parties.